IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ARMANDO CAESAR | ) | CASE NO. 4:09 CV 1594 |
| RODRIGUEZ-BARON, | ) | |
| | ) | JUDGE PATRICIA A. GAUGHAN |
| Petitioner, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| RICHARD HALL, Warden, | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | |

## Introduction

Before me by referral[1] is the petition of Armando Caesar Rodriguez-Baron for a writ of habeas corpus under 28 U.S.C. § 2254.[2]  Rodriguez-Baron is incarcerated at the Richland Correctional Institution, and was so at the time of the filing of the petition.[3]  He is serving an eight-year prison term for possession of marijuana, such sentence imposed after his 2007 conviction following a trial at Mahoning County, Ohio, Common Pleas Court.[4]

Rodriguez-Baron asserts three grounds for relief:  (1) that the joinder of his trial with that of his co-defendant prejudiced him and violated his Fifth and Fourteenth Amendment right to due process of law;[5] (2) that he received ineffective assistance from his trial counsel

---

[1] Non-document entry dated 8/6/2009.

[2] ECF # 1.

[3] *Id*. at 1.

[4] *Id*.

[5] *Id*. at 17.

(and, by extension, from his appellate counsel, who failed to raise this issue on appeal), in violation of his Sixth and Fourteenth Amendment right to assistance of counsel;[6] and (3) that his conviction was against the manifest weight of the evidence.[7]  With respect to grounds one and two, the State contends that Rodriguez-Baron is in procedural default, or, in the alternative, that he suffered no prejudice as a result of either the joinder or the strategies pursued by his respective counsels.[8]  As to the third ground, the State responds that it is not cognizable on habeas corpus review.[9]

For the reasons that follow, I will recommend that Rodriguez-Baron's petition be denied in part and dismissed in part.

## Facts

### A.     Underlying facts and state trial

The underlying facts as found by the Ohio appellate court are as follows.[10]  Pursuant to a search warrant issued on the basis of information provided by a confidential informant, members of the Alcohol, Tobacco, and Firearms Task Force entered the home of Daniel

---

[6] *Id*. at 23.

[7] *Id*. at 30.

[8] ECF # 7 at 15-25.

[9] *Id*. at 26.

[10] Facts found by the state appeals court on its review of the record are presumed correct by the federal habeas court. *Brumley v. Wingard*, 269 F.3d 629, 637 (6th Cir. 2001).

Morales.[11]  Inside, they found Morales, his family, Franky Deltoro, and Rodriguez-Baron.[12]  Under the basement stairs, police located a black duffel bag bearing Deltoro's name containing a 35-pound brick of marijuana.[13]  They also found a trash bag containing 24 separate baggies, each filled with one pound of marijuana.[14]  Officers found a scale and more baggies nearby.[15]  The Mahoning County Grand Jury indicted Rodriguez-Baron, Deltoro, and Morales on one count of possession of marijuana and one count of trafficking in marijuana each.[16]

Morales agreed to testify against Rodriguez-Baron and Deltoro as part of a plea agreement.[17]  According to him, Rodriguez-Baron, Deltoro, and two other men delivered two bricks of  marijuana to Morales's house.[18]  Rodriguez-Baron and Deltoro remained at the house over the next few days, during which time they aided Morales in dividing and

---

[11] ECF # 7, Attachment 2 (Exhibits 1-19), at 60.

[12] *Id*.

[13] *Id*.

[14] *Id*.

[15] *Id*.

[16] *Id*.

[17] *Id*. at 61, 65.

[18] *Id*. at 60.

packaging one of the two bricks for sale and distribution.[19]  They did not get around to dividing the second brick before the authorities arrived.[20]

Deltoro and Rodriguez-Baron were joined as defendants.[21]  Soon thereafter, Deltoro moved to compel the discovery of the informant's identity.[22]  He also moved to suppress evidence based on lack of probable cause for the search warrant, owing to the informant's lack of reliability.[23]  The trial court denied the suppression motion, implicitly denying Deltoro's motion to compel disclosure of the informant's identity at the same time.[24]

The co-defendants subsequently discovered an audio-taped conversation between Morales and the informant, held prior to the delivery of the marijuana to Morales' house, indicating that a woman was expected to make the delivery.[25]  Requiring the informant's testimony to lay the foundation for this evidence, Deltoro again moved to have his identity revealed.[26]  This time the trial court granted the motion, but the State appealed and won a remand.[27]  Before the trial court could then rule on remand, the State struck a deal with the

---

[19] *Id.*

[20] *Id.*

[21] *Id.* at 60-61.

[22] *Id.* at 8.

[23] *Id.* at 8-9.

[24] *Id.*

[25] ECF # 7, Attachment 2 (Exhibits 1-19) at 9.

[26] *Id.*

[27] *Id.* at 11.

co-defendants in which it agreed to drop the charge of trafficking in marijuana in exchange for not having to reveal the identity of the informant.[28]  The two sides agreed to the stipulation in February 2006.[29]

In January 2007, Rodriguez-Baron moved to sever his trial from that of Deltoro.[30] The trial court denied the motion.[31]  Rodriguez-Baron was then tried jointly with Deltoro on the sole charge of possession of marijuana.[32]  The jury returned verdicts of guilty against both men, and the court sentenced Rodriguez-Baron to eight years in prison.[33]

**B.    Direct appeal**

Rodriguez-Baron, through new counsel,[34] timely appealed his conviction to the Ohio Seventh District Court of Appeals,[35] raising two assignments of error:

1.    The trial court violated Rodriguez-Baron's rights to due process and a fair trial when it entered a judgment of conviction for possession of marijuana, which was against the manifest weight of the evidence.[36]

-----------------------

[28] *Id.* at 12, 60-61.

[29] *Id.*

[30] *Id.* at 13, 61.

[31] *Id.* at 61.

[32] *Id.*

[33] *Id.* at 15-19.

[34] Rodriguez-Baron was represented at trial by Douglas B. Taylor, *see*, ECF # 1 at 13, and on direct appeal to the Ohio Seventh District Court of Appeals by Katherine A. Szudy, *see*, ECF # 1 at 13.

[35] ECF # 7, Attachment 2 (Exhibits 1-19) at 61.

[36] *Id.*

    2.       The trial court abused its discretion by permitting Rodriguez-Baron's trial to be joined with codefendant Deltoro's trial.[37]

The state responded in opposition,[38] and the Ohio Seventh District Court of Appeals affirmed Rodriguez-Baron's conviction.[39]

Rodriguez-Baron then appealed the conviction, *pro se*, to the Ohio Supreme Court, citing the following three propositions of law:

    1.       Whether due process rights, and the right to a fundamentally fair trial are implicated where a judgment of conviction ('in a felony drug offense alleging possession of marijuana') was/is against the manifest weight of the evidence. *see*: U.S.C.A. Const. Amends. 5, 6 and 14, Ohio Const. Article I, at: Section 16 of the Ohio Constitution.[40]

    2.       Whether a 'prejudicial joiner' of appellant and his co-defendant's trial violated appellant's right to a fundamentally fair trial and to due process of law. *see*: U.S.C.A. Const. Amends. 5, 6 and 14.[41]

    3.       Whether, and when appointed counsel fails to raise clear and obvious plain errors affecting substantial rights and instead pursues lesser and far weaker issues on a criminal defendant's only state-sponsored appeal as of right, such appellant is deprived of the Sixth Amendment right to effective assistance of counsel. *see*: U.S.C.A. Const. Amend. 6; *Strickland v. Washington*, 466 U.S. 668; *Evitts v. Lucey* (1985), 469 U.S. 387, 397; and, *State v. Murhahan*, 63 Ohio St. 3d 60.[42]

---

[37] *Id.* at 66.

[38] *Id.* at 44.

[39] *Id.* at 59.

[40] *Id.* at 72.

[41] *Id.*

[42] *Id.* at 72-73.

The Ohio Supreme Court denied leave to appeal, dismissing the appeal as not involving any substantial constitutional question.[43]

## C.  Federal habeas petition

On July 13, 2009, Rodriguez-Baron filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254[44] asserting three grounds for relief:

> Ground for Relief No. I:  Petitioner was denied due process and equal protection of the law when the trial court allowed petitioner's trial to be joined with the trial of his co-defendant in violation of the Fifth and Fourteenth Amendment to the United States Constitution.[45]

> Ground for Relief No. II:  Petitioner was denied the effective assistance of counsel on appeal when counsel failed to raise clear and obvious claims of ineffectiveness of trial counsel in violation of the Sixth and Fourteenth Amendment to the United States Constitution.[46]

> Ground for Relief No. III:  Petitioner's conviction for possession of marijuana is against the manifest weight of the evidence due to the lack of evidence supporting the elements of the charge in violation of the Fourteenth Amendment to the United States Constitution.[47]

Rodriguez-Baron explained that joinder of his and Deltoro's trials prejudiced him by (1) forcing him to enter into a pretrial agreement that did not confer any benefit upon him, (2) preventing him from using potentially exculpatory evidence in his defense, and

---

[43] *Id.* at 98.

[44] ECF # 1.

[45] *Id.* at 17.

[46] *Id.* at 23.

[47] *Id.* at 30.

(3) allowing evidence to be used against him that would have been inadmissible had he been tried separately.[48]

First, Rodriguez-Baron argued that the pretrial agreement protecting the identity of the confidential informant had not benefitted him because the two charges against him (possession of and trafficking in marijuana) were crimes of similar import.[49]  As such, he could only have been convicted of one of the two offenses regardless of the agreement.[50] Furthermore, in the absence of the agreement, Rodriguez-Baron would have been able to obtain the identity of the informant, which would have enabled him to lay the evidentiary foundation for the audio-taped conversation between Morales and the informant at trial.[51] Finally, if the trial had been severed, the black duffel bag with Deltoro's name on it would not have been admissible as evidence against Rodriguez-Baron.[52]

Concerning the ineffective assistance of counsel claim, Rodriguez-Baron explained that his trial counsel had failed to recognize how detrimental the stipulation was to his case and that he had failed to conduct a proper pre-trial investigation.[53]  As such, his appellate

---

[48] *Id.* at 20-22.

[49] *Id.* at 21.

[50] *Id.*

[51] *Id.* at 21-22.

[52] *Id.* at 21.

[53] *Id.* at 23.

counsel's failure to raise the claim of ineffective assistance of trial counsel on direct appeal was itself an instance of ineffective assistance of counsel.[54]

The State filed a return of writ.[55]  Regarding joinder, the State argued that Rodriguez-Baron had procedurally defaulted by not offering the same factual basis for this claim on his direct appeal.[56]  Even if the claim was still viable, Rodriguez-Baron had not been able to show any prejudice resulting from the joinder.[57]  First, he had not been compelled to enter into the stipulation and had not objected to the stipulation at the time he entered into it.[58]  In addition, the two offenses (possession of and trafficking in marijuana) had not been ruled crimes of similar import by the Ohio Supreme Court until 2008, well after his conviction.[59]  Furthermore, the audio-taped conversation only revealed that a woman was expected to deliver the drugs, not that a woman actually did deliver them.[60]  And finally, there was no legal basis for the assertion that the black duffel bag with Deltoro's name on it would have been inadmissible against Rodriguez-Baron had he been tried separately.[61]

_____

[54] *Id.*

[55] ECF # 7.

[56] *Id.* at 15-16.

[57] *Id.* at 19.

[58] *Id.*

[59] *Id.* at 19-20.

[60] *Id.*

[61] *Id.* at 20.

Concerning ineffective assistance of counsel, the State again argued that Rodriguez-Baron had procedurally defaulted.[62]  Alternatively, the State argued that Rodriguez-Baron's trial counsel had rendered reasonable professional assistance because he was under no obligation to predict future legal developments.[63] Thus, his appellate counsel's decision not to raise the issue of ineffective assistance of trial counsel was a sound one.[64]

With regard to ground three, the State pointed out that a claim of verdict against the manifest weight of the evidence "is not cognizable on habeas corpus review because it does not implicate constitutional concerns but instead only raises an issue of state law."[65]

Rodriguez-Baron responded with a traverse,[66] in which he agreed with the State's assertions regarding his manifest weight of the evidence claim.[67]  He disagreed with the State, however, regarding his first two grounds for relief.[68]  Rodriguez-Baron disputed the contention that he had not offered the same factual and legal theories for his claims on his direct appeal, claiming that the differences were only minor and semantic, and stressing the lesser standards to which *pro se* litigants are held.[69]  He then argued that he had been

---

[62] *Id.* at 22.

[63] *Id* at 23.

[64] *Id.* at 23-25.

[65] *Id.* at 26.

[66] ECF # 8.

[67] *Id.* at 2.

[68] *Id.*

[69] *Id.* at 3-4.

prejudiced by the joinder because Morales' testimony had not been corroborated by other evidence.[70]  He also alleged that the State had violated the terms of the stipulation agreement by introducing testimony concerning events that occurred prior to the date when the search warrant was executed.[71]  Rodriguez-Baron then proceeded to restate his arguments regarding the ineffective assistance of counsel claim.[72]

## Analysis

### A.    Preliminary issues

As a preliminary matter, I observe that the parties do not dispute, and my own review establishes that:  (1) Rodriguez-Baron was in state custody in Ohio pursuant to his conviction and sentence in that state at the time he filed the present petition for federal habeas relief, thus establishing jurisdiction in this court over that petition;[73] (2) the present petition was filed within one year of the conclusion of his state review, as required by 28 U.S.C. § 2244(d)(1); and (3) the grounds for relief presented here have been totally exhausted in the Ohio courts.[74]

---

[70] *Id.* at 5-6.

[71] *Id.* at 7.

[72] *Id.* at 7-11.

[73] 28 U.S.C. § 2254(a); *Garlotte v. Fordice*, 515 U.S. 39, 43-44 (1995).

[74] 28 U.S.C. § 2254(b), (c); *Rhines v. Weber*, 544 U.S. 269, 274 (2005).

Moreover, I note that Rodriguez-Baron has not asked for an evidentiary hearing.[75] Since the factual record is not contested in any material respect, I recommend finding that no evidentiary hearing is warranted here.[76]

## B.     Standard of review

### 1.     *Procedural default*

Under the doctrine of procedural default, the federal habeas court is precluded from reviewing a claim for relief if the petitioner failed to obtain consideration of that claim on its merits in state court, either because the petitioner failed to raise it when state remedies were still available or due to some other violation of a state procedural rule.[77]

When a violation of a state procedural rule is alleged as the basis for the default, the Sixth Circuit has long-employed a four-part test to determine if the claim is procedurally defaulted in a federal habeas proceeding:

(1)     Does a state procedural rule exist that applies to the petitioner's claim?

(2)     Did the petitioner fail to comply with that rule?

(3)     Did the state court rely on that failure as the basis for its refusal to address the merits of the petitioner's claim?

(4)     Is the state rule violated by the petitioner an adequate and independent state law basis for barring the federal court from considering the claim?[78]

---

[75] *See*, 28 U.S.C. § 2254(e)(2).

[76] *See*, *Reynolds v. Bagley*, 498 F.3d 549, 552 (6th Cir. 2007).

[77] *Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006).

[78] *Morales v. Mitchell*, 507 F.3d 916, 937 (6th Cir. 2007) (citation omitted).

In addition to establishing these elements, the state procedural rule must be shown to be (a) firmly established and (b) regularly followed before the federal habeas court will decline to review an allegedly procedurally defaulted claim.[79]

If a procedural default is established, the default may be overcome if the petitioner can show cause for the default and actual prejudice from the court's failure to address the alleged constitutional violation.[80]  In addition, procedural default may also be excused by a showing of actual innocence.[81]

To establish "cause" for the default, a petitioner must generally show that some objective factor, something external to himself, precluded him from complying with the state procedural rule.[82] Demonstrating "prejudice" requires the petitioner to show that the alleged constitutional error worked to his actual and substantial disadvantage, infecting the entire proceeding with error of a constitutional dimension.[83]  There can be no prejudice if the petitioner cannot show a reasonable probability of a different outcome at trial.[84]

Notwithstanding these elements, the Supreme Court has held that federal habeas courts are not required to consider an assertion of procedural default before deciding a claim

---

[79] *Smith v. Ohio Dep't of Rehab. & Corrs.*, 463 F.3d 426, 431 (6th Cir. 2006) (citations omitted).

[80] *Deitz v. Money*, 391 F.3d 804, 808 (6th Cir. 2004).

[81] *Id.*

[82] *Coleman v. Thompson*, 501 U.S. 722, 753 (1991).

[83] *United States v. Frady*, 456 U.S. 152, 170 (1982).

[84] *Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003).

against the petitioner on the merits.[85]  In that regard, the Sixth Circuit has stated that a federal habeas court may bypass an issue of procedural default when that issue presents complicated questions of state law and addressing it is unnecessary to resolving the claim against the petitioner on the merits.[86]

## 2.     *Contrary to, or unreasonable application of, clearly established federal law*

Under 28 U.S.C. § 2254(d)(1), when the federal habeas claim was adjudicated on the merits by the state court, the writ may not issue from the federal court unless the state decision at issue was either "contrary to," or involved an "unreasonable application of," clearly established federal law.

As is now well-established, the terms "contrary to" and "unreasonable application of" are not identical.  The words "contrary to" are to be understood as meaning "diametrically different, opposite in character or nature, or mutually opposed."[87]  Under the "unreasonable application" language, a federal habeas court may grant relief only if the state court correctly identifies the governing legal principle applicable to the petitioner's claim but then unreasonably applies that principle to the facts of the petitioner's case.[88]  The proper inquiry under this clause on habeas review is whether the state court decision was "objectively

---

[85] *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997).

[86] *Hudson v. Jones*, 351 F.3d 212, 215-16 (6th Cir. 2003).

[87] *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

[88] *Id*. at 407-08.

unreasonable," not simply erroneous or incorrect.[89]  In addition, when analyzing the state court adjudication under either of these tests, the federal habeas court must locate clearly established federal law in the holdings of the United States Supreme Court.[90]

### 3.    *Modified AEDPA deference*

In cases where the state court did not fully address the petitioner's fairly presented constitutional claim in arriving at its decision to deny that claim, that decision is not entitled to full deference from the federal court under the AEDPA rubric.  In such cases, where the state court "does not squarely address the claim, but engages in what resembles the proper constitutional analysis, [the federal habeas court] will review the record and the law, and will reverse [the state court decision] only if [the federal habeas court] determine[s] that the state court decision was contrary to, or an unreasonable application of, clearly established federal law.[91]

Stated differently, where the state court ultimately adjudicated a fairly presented constitutional claim, but did so without fully considering the federal constitutional issue raised by the petitioner, the Sixth Circuit teaches that the federal habeas court should review that state court decision by applying a modified version of AEDPA deference, along the lines

---

[89] *Id*. at 409-11.

[90] *Id*. at 412.

[91] *Dyer v. Bowlen*, 465 F.3d 280, 284 (6th Cir. 2006) (citing *Filiaggi v. Bagley*, 445 F.3d 851, 854 (6th Cir. 2006)); *see also*, *Garcia v. Andrews*, 488 F.3d 370, 374 (6th Cir. 2007).

set forth in *Maldonado v. Wilson*.[92]  That process, as delineated in *Maldonado*, requires the federal court to first "conduct an independent review of the record and applicable law,"[93] followed by applying "the AEDPA standard of whether the state court result is contrary to or unreasonably applies clearly established federal law."[94]

A modified AEDPA review was proper where the issue before the state court concerned whether federal due process rights were violated by the admission of testimony alleged to violate state evidence law and the state court decision was unclear as to whether its "finding was rooted in state evidence law or in federal constitutional law."[95]  Thus, the key, as to use of AEDPA deference, is that the state court inquiry – no matter the source – bears some similarity to the inquiry mandated under the applicable clearly established federal law.[96]

## 4.    *Noncognizable claims*

The federal habeas statute, by its own terms, restricts the writ to state prisoners who are in custody in violation of federal law.[97]  Accordingly, it is well-settled that, to the extent

---

[92] *Vasquez v. Jones*, 496 F.3d 564, 569-70 (6th Cir. 2007) (citing *Maldonado v. Wilson*, 416 F.3d 470, 475-76 (6th Cir. 2005)).

[93] *Maldonado*, 416 F.3d at 476 (citing *Harris v. Stovall*, 212 F.3d 940, 943 n.1 (6th Cir. 2000)).

[94] *Id*. (citing *Harris*, 212 F.3d at 943).

[95] *Id*. at 475 (citing *Howard v. Bouchard*, 405 F.3d 459, 469 (6th Cir. 2005)).

[96] *Id*. at 476.

[97] 28 U.S.C. § 2254(a).

a petitioner claims that his custody is a violation of state law, the petitioner has failed to state a claim upon which federal habeas relief may be granted.[98]  In such circumstances, a claim for federal habeas relief based solely on the ground of purported violation of state law is properly dismissed by the federal habeas court as non-cognizable.[99]

However, a claimed error of state law may nevertheless serve as the basis for federal habeas relief if such error resulted in the petitioner being denied "fundamental fairness" at trial.[100]  The Supreme Court has made clear that it defines "very narrowly" the category of infractions that violate the "fundamental fairness" of a trial.[101]  Specifically, such violations are restricted to offenses against "'some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'"[102]

The petitioner bears the burden of showing that a principle of fundamental fairness was violated.[103]  In so doing, the federal habeas court must follow the rulings of the state's highest court with respect to state law[104] and may not second-guess a state court's

_____

[98] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).

[99] *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007).

[100] *Estelle*, 502 U.S. at 67-68.

[101] *Bey*, 500 F.3d at 522, quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990).

[102] *Id*. at 521, quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996).

[103] *Id.*

[104] *Wainwright v. Goode*, 464 U.S. 78, 84 (1983).

-17-

interpretation of its own procedural rules.[105]  Further, while, in general, distinct constitutional claims of trial error may not be cumulated to grant habeas relief,[106] the Sixth Circuit has recognized that "'[e]rrors that might not be so prejudicial as to amount to a deprivation of due process when considered alone, may cumulatively produce a trial setting that is fundamentally unfair.'"[107]

## C.    Analysis of the grounds for relief

### 1.    *Prejudicial joinder*

Initially, I note the State's argument that Rodriguez-Baron procedurally defaulted on his claim of prejudicial joinder by not offering the same factual and legal theories on his direct appeal as he does in his habeas petition. But, in resolving the claim on the merits, it is unnecessary to address the procedural default argument here.  Therefore, instead of embarking on an unnecessary analysis of state law, I will bypass procedural default and proceed directly to the merits of the claim.

In *Zafiro v. United States*, the United States Supreme Court stated that joint trials are favored for defendants who are jointly indicted because they promote efficiency and avoid the potential for inconsistent verdicts.[108]  Improper joinder does not, in itself, violate the

---

[105] *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988).

[106] *Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006).

[107] *Gillard v. Mitchell*, 445 F.3d 883, 898 (6th Cir. 2006), quoting *Walker v. Engle*, 703 F.2d 959, 963 (6th Cir. 1983).

[108] *Zafiro v. United States*, 506 U.S. 534, 537 (1993).

Constitution.[109]  Rather, misjoinder would rise to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial.[110]

Here, the state appellate court properly recognized this standard. It noted that the law generally favors joinder of co-defendants for reasons including judicial economy and economic efficiency, and because it "minimizes the possibility of incongruous results in successive trials before different juries."[111]  It also provided that, in certain cases, joinder could be prejudicial enough to warrant severance.[112]

Applying this standard to the case before it, the state appellate court stated that "[Rodriguez-Baron] can point to no prejudice suffered as a result of his joint trial with Deltoro."[113]  Had Rodriguez-Baron been granted a separate trial, "the evidence offered against him would have been exactly the same as in his joint trial."[114]  Thus, the court found, Rodriguez-Baron's claim was without merit.[115]

_____

[109] *United States v. Lane*, 474 U.S. 438, 446 n.8 (1986).

[110] *Id.*

[111] ECF # 7, Attachment 2 (Exhibits 1-19), at 66 (citing *State v. Thomas*, 61 Ohio St. 2d 223, 225, 400 N.E.2d 401, 404 (1980)).

[112] *Id.* at 67 (citing Ohio Rule of Criminal Procedure 14).

[113] *Id.* at 67.

[114] *Id.*

[115] *Id.*

It is worth noting that Rodriguez-Baron, between his direct appeal and habeas petition, refined his prejudicial joinder claim somewhat.[116]  As such, the state appellate court did not deal extensively with one particular point of contention currently raised in his habeas petition.[117]  Essentially, Rodriguez-Baron contends that, had he not been joined with Deltoro, he would not have agreed to the stipulation that preserved the anonymity of the confidential informant.  With the informant's identity revealed, he would have been able to lay the proper foundation to enter into evidence the audio-taped recording of the conversation between the informant and Morales.  This evidence would then have been sufficient to change the outcome of his trial; thus, the joinder was prejudicial.

The record, however, discloses no attempt by Rodriguez-Baron to object to or contest the stipulation in any way.  By all indications, he voluntarily agreed to it.  And since he did not move for severance until nearly a year after the agreement had been reached, it is unclear how or why his decision regarding the stipulation would have been any different had severance been granted. Furthermore, even if Rodriguez-Baron had been granted severance a year before he moved for it, and even if he had not agreed to the stipulation, the informant's identity still might not have been revealed. When the parties reached the agreement in question, the issue had just been remanded to the trial court for a hearing concerning the

---

[116] *Id*. at 17, 26.

[117] One could argue that Rodriguez-Baron failed to fairly present the current form of his prejudicial joinder claim in the Ohio courts. Regardless, the claim has no merit in either its current or prior incarnation.

-20-

motion to disclose the informant's identity.[118] Because that hearing never took place, the trial court never made a final ruling on whether or not the State had to make the disclosure.

Essentially, this is a fanciful argument based on multiple layers of speculation. It has no merit.

Because the state appellate court met the AEDPA standard by reasonably applying clearly established federal law, Rodriguez-Baron should be denied habeas relief on this ground.

## 2. *Ineffective assistance of counsel*

Initially, I again note the State's argument that Rodriguez-Baron procedurally defaulted on his claim of ineffective assistance of counsel by not offering the same factual and legal theories on his direct appeal as he does in his habeas petition. But, in resolving the claim on the merits, it is again unnecessary to address the procedural default argument. Therefore, instead of embarking on an unnecessary analysis of state law, I will bypass procedural default and proceed directly to the merits of the claim.

Rodriguez-Baron first raised his ineffective assistance of appellate counsel claim on his appeal to the Ohio Supreme Court. The Ohio Supreme Court denied leave to appeal, dismissing his appeal as not involving any substantial constitutional question. Therefore, because the state court ultimately adjudicated Rodriguez-Baron's fairly presented constitutional claim, but did so without fully considering the constitutional issue he raised, I will review the state court's decision by applying the modified version of AEDPA

---

[118] ECF # 7, Attachment 2 (Exhibits 1-19) at 8-11.

deference laid out by the Sixth Circuit in *Maldonado v. Wilson*.[119]  This requires that I first conduct an independent review of the record and applicable law, followed by an application of the AEDPA's "contrary to or unreasonable application of" standard.[120]

Claims of ineffective assistance of counsel are adjudicated pursuant to the well-known standard of *Strickland v. Washington*.[121]  In *Strickland*, the Supreme Court articulated a two-part test that a defendant must satisfy to establish a Sixth Amendment violation:  (1) "the defendant must show that counsel's performance was deficient," and (2) "the defendant must show that the deficient performance prejudiced the defense."[122]

Under the first prong of deficient performance, a defendant must show that his counsel's representation "fell below an objective standard of reasonableness."[123]  In making that determination, the court must be highly deferential to counsel's actions; that is, it "must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance ... [such] that under the circumstances, the challenged action 'might be considered sound trial strategy.'"[124]  Actions should not be evaluated in hindsight but from the perspective of circumstances at the time of the alleged errors.[125]  The key is not whether

---

[119] *Vasquez*, 496 F.3d at 569-70 (citing *Maldonado*, 416 F.3d at 475-76).

[120] *Maldonado*, 416 F.3d at 476 (citing *Harris*, 212 F.3d at 943 n.1).

[121] *Strickland v. Washington*, 466 U.S. 668 (1984).

[122] *Id*. at 687.

[123] *Id*. at 688.

[124] *Id.* at 689 (internal citations omitted).

[125] *Id*. at 690.

counsel's choices ultimately were strategically beneficial, but whether they were reasonable at the time.[126]  To that end, counsel must make a reasonable investigation into possible alternatives but, once having done so, will be presumed to have acted reasonably in selecting the action taken.[127]

To show prejudice under *Strickland*'s second prong, the petitioner must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[128]  A "reasonable probability is a probability sufficient to undermine confidence in the outcome."[129]  In arriving at that determination, courts are to "consider the totality of the evidence before the judge or jury."[130]

Both prongs of the test must be met in order for the writ to issue; thus, courts need not address the issue of deficient performance if the petitioner cannot establish prejudice.[131]

Here, Rodriguez-Baron claims that his appellate counsel was ineffective because she failed to argue that his trial counsel was ineffective.  Hence, this argument only has merit if trial counsel was, in fact, ineffective.

---

[126] *Roe v. Flores*, 528 U.S. 470, 481 (2000).

[127] *Strickland*, 466 U.S. at 691.

[128] *Id.* at 694.

[129] *Id.*

[130] *Id.* at 695.

[131] *Id.* at 697.

To that end, Rodriguez-Baron claims that his trial counsel provided deficient and prejudicial assistance when he agreed to the stipulation that preserved the anonymity of the confidential informant in exchange for dismissal of the trafficking charge. This is so because possession and trafficking are allied and similar offenses, as determined by the Ohio Supreme Court in 2008,[132] meaning he could not have been convicted of both crimes.

Trial counsel agreed to the stipulation in 2006, however. Thus, at the time of Rodriguez-Baron's trial, possession and trafficking were not allied and similar offenses under Ohio law, and he could, in fact, have been convicted of both. Furthermore, even assuming that the two charges had been allied and similar offenses at the time of Rodriguez-Baron's trial, the stipulation that trial counsel agreed to still resulted in the more severe charge being dismissed.[133] Thus, notwithstanding the non-applicability of the Ohio Supreme Court's 2008 decision, trial counsel did not perform deficiently by agreeing to the stipulation.

The remainder of Rodriguez-Baron's bases for alleging ineffective assistance of counsel overlap substantially with his claim of prejudicial joinder. He essentially contends that, since joinder prejudiced him, his counsel's failures to recognize and contest this prejudice were instances of ineffective assistance. Because the record indicates that there is no merit in his arguments on the joinder claim, however, there can be no ineffective assistance stemming from counsel's decision not to raise those same arguments.

---

[132] *State v. Cabrales*, 118 Ohio St. 3d 54, 886 N.E.2d 181 (Ohio 2008).

[133] *Compare*, Ohio Rev. Code § 2925.11(C)(3)(f) and Ohio Rev. Code § 2925.03(C)(3)(f).

Therefore, Rodriguez-Baron should be denied habeas relief on this ground.  Neither his trial counsel nor his appellate counsel performed deficiently.

### 3.   *Manifest weight of the evidence*

The federal habeas statute restricts the writ to state prisoners who are in custody in violation of federal law.[134]  Thus, a petitioner who claims that his custody is a violation of state law has failed to state a claim upon which federal habeas relief may be granted.[135]

Rodriguez-Baron claims that his verdict was against the manifest weight of the evidence.  This is a purely state law claim.  Therefore, it is not cognizable on federal habeas corpus review and should be dismissed.[136]

## Conclusion

For the foregoing reasons, I recommend that the petition of Armando Caesar Rodriguez-Baron for a writ of habeas corpus be denied in part and dismissed in part.

Dated:                                                    s/ William H. Baughman, Jr.
                                                           United States Magistrate Judge

---

[134] 28 U.S.C. § 2254(a).

[135] *Lewis*, 497 U.S. at 780.

[136] In his traverse, Rodriguez-Baron agreed with the State that his manifest weight of the evidence claim was non-cognizable.

**Objections**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.[137]

---

[137] *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).